[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* Slip Opinion No. 2014-Ohio-4809.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-4809

CLEVELAND CLINIC FOUNDATION, D.B.A. CLEVELAND CLINIC, ET AL.,

APPELLANTS, *v.* BOARD OF ZONING APPEALS OF THE CITY OF CLEVELAND,

APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* Slip Opinion No. 2014-Ohio-4809.]

*Zoning—Administrative appeals—R.C. 2506.04—Standard of review for court of appeals in reviewing decision of common pleas court—Appellate court must affirm unless it finds, as matter of law, that common pleas court decision is unsupported by substantial, reliable, and probative evidence on whole record.*

(No. 2013-0654—Submitted February 25, 2014—Decided November 5, 2014.)

APPEAL from the Court of Appeals for Cuyahoga County,

No. 98115, 2012-Ohio-6008.

_____

**O'CONNOR, C.J.**

{¶ 1}  This administrative appeal arises from a decision by appellee, the Board of Zoning Appeals of the City of Cleveland ("BZA"), which denied a permit to appellants, Cleveland Clinic Foundation ("the Clinic") and Fairview Hospital ("the Hospital"), to build a helipad on the roof of a new two-story addition on the Hospital.

{¶ 2}  We decide a narrow issue:  the proper standard of review for courts to apply in appeals, pursuant to R.C. 2506.04, from decisions of zoning authorities that restrict the use of property.  Because we conclude that the Eighth District Court of Appeals applied an incorrect standard of review in reversing the decision of the Cuyahoga County Court of Common Pleas, we reverse the appellate court's judgment.  And because we conclude that the trial court properly ruled in favor of the appellants, we reinstate its judgment.

## RELEVANT BACKGROUND

{¶ 3}  Construction of the Hospital, which is owned by the Clinic, in its current location began in 1952.  The Hospital sits on two parcels of land located at 18101 Lorain Avenue in Cleveland ("the City").

{¶ 4}  In March 1964, the City rezoned both of the Hospital's parcels of land.  After rezoning, both parcels were zoned as a Local Retail Business District, which is "a business district in which such uses are permitted as are normally required for the daily local retail business needs of the residents of the locality only."  Cleveland Code of Ordinances ("C.C.O.") 343.01(a).  The Hospital has remained in a Local Retail Business District zone since 1964, but many variances subsequently were granted to the Hospital.

{¶ 5}  Today, the Hospital has a Level III Neonatal Intensive Care Unit, serving pediatric patients at the highest risk. It also has a Level II Trauma Center and provides critical care and intervention to cardiac and stroke patients.

2

**{¶ 6}** In October 2010, the Clinic filed an application with the City's Department of Building and Housing seeking approval of three construction projects for the Hospital: (1) construction of a 153,470-square-foot, two-story addition to the Hospital, (2) renovation of a parking lot, and (3) construction of a helipad on the roof of the two-story addition. Central to this appeal is the request for approval to construct a helipad.

**{¶ 7}** On November 10, 2010, the City denied the application in its entirety due to "non-conformance." In its notice rejecting the application for the heliport, the City cited C.C.O. 343.01(b)(8), which provides that "accessory uses"[1] are allowed "only to the extent necessary normally accessory to the limited types of neighborhood service use permitted under this division." Thus, the City rejected the appellants' assertions that a helipad was a permitted use for property within a Local Retail Business District.

**{¶ 8}** The appellants appealed to the BZA. During the public hearing by the BZA, it heard evidence from both opponents and proponents of the Hospital's requests.

**{¶ 9}** The opponents' arguments included concerns about traffic, parking, and noise problems in their neighborhood, which have increased as the Hospital has grown over the years. Other concerns focused on the safety of helicopters flying onto the low roof of the proposed new building. Notably, however, there was no dispute that the use of helipads by hospitals is common and that helipads foster better patient outcomes. To the contrary, the testimony established that helipads at medical facilities have not only become nearly ubiquitous but are also vital to critical-care patients.

**{¶ 10}** The testimony at the hearing suggested that most hospitals in Ohio and other states have helipads. More importantly, the unrebutted evidence at the

---

[1] An "accessory use or building" is "a subordinate use or building customarily incident to and located on the same lot with the main use or building." C.C.O. 325.02.

hearing established that almost all of the hospitals in the Cleveland metropolitan area have helipads. In fact, of the seven hospitals located in Cleveland, only Fairview does not have one. And of the 14 hospitals in the Cleveland metropolitan area, only two, including Fairview, have no helipad. Put another way, nearly 88 percent of hospitals in and around Cleveland have helipads.

{¶ 11} The need for a hospital-based helipad at Fairview was also made clear through the testimony at the hearing.

{¶ 12} Jan Murphy, the president of the Hospital, testified that the purpose of using a helicopter to transport patients "is really to save lives," particularly for pediatric and adult patients with immediately life-threatening conditions. As Murphy explained, there is a very limited "golden hour" in which "the lives of the majority of critically injured or critically ill patients can be saved," and a helipad helps the Hospital significantly reduce patient transport time:

> [I]f we look at ground transport from Fairview Hospital to Cleveland Clinic Main Campus * * *, by ground it's 22 minutes and this is from our trauma statistics, and that [by] a helicopter [it] would be five minutes * * *, Fairview to Rainbow Babies and Children's by ground is 24 minutes and then by helicopter is five minutes, and then the last is Medina to Fairview * * *, and ground from Medina to Fairview is 32 minutes and about eight minutes in a helicopter. So, that just gives us calculations of time frames for travel.

The testimony thus established a significant reduction in transport time for critically ill patients when a helicopter is used.

{¶ 13} After the hearing, the BZA determined that the parking-lot renovation was a permitted use and granted a variance permitting the construction

of the two-story addition. But the BZA denied a permit to construct the helipad atop the addition. Citing C.C.O. 343.01(b)(8), the BZA determined that a helipad is not "an accessory use authorized as of right" because "those uses that the Zoning Code characterizes as retail businesses for local or neighborhood needs would not involve a heliport as normally required for the daily local retail business needs of the residents of the locality."

{¶ 14} Pursuant to R.C. Chapter 2506, appellants appealed the BZA's denial of the helipad to the Cuyahoga County Court of Common Pleas. The court reversed, relying on C.C.O. 343.01(b)(1). That section provides that with limited exceptions, all uses permitted in the Multi-Family District are also permitted in the Local Retail Business District. The common pleas court looked at C.C.O. 325.721, 325.02, and 325.721 and concluded that a helipad is "customarily incident to" a hospital and therefore qualifies as an "accessory use." The court reasoned that "hospitals and their accessory uses are expressly permitted in the City's Multi-Family District, and are therefore permissible in the City's areas that are zoned 'Local Retail Business District.' " The common pleas court concluded that because the "record before this [court]" established that a helipad qualified as an "accessory use" in a Multi-Family District, it was "therefore permissible in the instant case."

{¶ 15} The BZA appealed the common pleas court's decision to the Eighth District Court of Appeals. The appellate court reversed.

{¶ 16} The appellate court's initial, unanimous opinion held that the common pleas court abused its discretion, "because the zoning ordinance was ambiguous and the trial court was required to defer to the BZA's reasonable interpretation of the ordinance." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* 8th Dist. Cuyahoga No. 98115, 2012-Ohio-4602, ¶ 6. It explained:

The trial court determined that there was no statutory ambiguity; it could resolve the conflict between the parties through a "plain reading of the Code itself, and [by] following the exact language of the Code." J.E. at 5. Relying on C.C.O. 343.01(b)(1), the trial court determined that because a hospital is a permitted use in a Multi-Family District, then it is also a permitted use in a Local Retail Business District. The court then determined (and the Clinic agrees) that a helipad is "customarily incident to" a hospital, and that, therefore, a helipad is a permitted accessory use in a Local Retail Business District.

* * *

In contrast, the BZA relied on C.C.O. 343.01(b)(8) and upheld the Zoning Administrator's determination that a helipad is prohibited in a Local Retail Business District. C.C.O. 343.01(b)(2) sets forth various uses that qualify as retail business for local or neighborhood needs in a Local Retail Business District. These uses include a variety of retail establishments, eating establishments, service establishments, business offices, automotive services, parking garages, charitable institutions, and signs. Accessory uses are also permitted under C.C.O. 343.01(b)(8), but "only to the extent necessary normally accessory to the limited types of neighborhood service use permitted under this division." C.C.O. 343.01(b)(8).

Relying on C.C.O. 343(b)(8).01, the BZA found that under the zoning statute, a helipad was not a permissible accessory in a Local Retail Business District. Specifically, the BZA determined that the evidence set forth that a helipad was not "normally required for the daily local retail business needs of the resident

6

locality only," and so a helipad was not "an accessory use as of right in a Local Retail Business District." BZA Resolution.

* * *

These two reasonable and, yet, different statutory positions taken by the BZA and the trial court make clear that the ordinance is susceptible to more than one interpretation and is, therefore, ambiguous. In fact, the trial court's journal entry and opinion highlights the ambiguity.

*Id.* at ¶ 15-18.

{¶ 17} On reconsideration, the appellate court attempted to clarify its analysis. It adhered to its previous judgment, but the court was now divided. It recognized that the law requires any ambiguity in a zoning ordinance to be construed in favor of the property owner, but unlike in the earlier opinion, the court declined to address the issue of ambiguity, finding instead that the issue is which provision of the C.C.O. applies. "When the BZA reasonably relies on a code provision, its determination should hold so long as its decision is not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals,* 8th Dist. Cuyahoga No. 98115, 2012-Ohio-6008, ¶ 22. The court held that the BZA had "reasonably relied on C.C.O. 343.01(b)(8) and the evidence in the record" in concluding that a helipad was not an accessory use as of right, and the trial court abused its discretion "in determining that the administrative order was not supported by reliable, probative, and substantial evidence." It further held that courts must give "due deference" to an agency that has accumulated special expertise.

**{¶ 18}** One judge, however, dissented. She asserted that given the ambiguity in C.C.O. 343.01(b)(8), the trial court properly reversed the BZA resolution because ambiguous zoning provisions must be construed in favor of the property owner. *Id.* at ¶ 29 (Boyle, P.J., dissenting).

**{¶ 19}** The appellants again sought reconsideration and en banc review and also asked the court of appeals to certify its decision as in conflict with those of other courts of appeals. Those motions were denied.

**{¶ 20}** We granted the appellants' request for discretionary review, 136 Ohio St.3d 1449, 2013-Ohio-3210, 991 N.E.2d 256, and now reverse.

## ANALYSIS

### *Standard of Review*

**{¶ 21}** Our analysis begins with an examination of the proper standard of review to be used by the courts in considering appeals from the decisions of local zoning boards.

**{¶ 22}** R.C. Chapter 2506 governs appeals to the courts of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals. R.C. 2506.04 governs the standard of review the trial court must apply in such an appeal. It provides that "the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." The statute further provides that the court's judgment may be appealed by any party to the court of appeals "on questions of law."

**{¶ 23}** This court has explained the standard of review in the common pleas court in appeals from zoning boards and contrasted it with the very different standard to be applied by the court of appeals:

The scope of review by the trial court is set forth in R.C. 2506.04, which requires the court to examine the "substantial, reliable and probative evidence on the whole record." This court has noted in *Cincinnati Bell v. Glendale* (1975), 42 Ohio St.2d 368, 370, 328 N.E.2d 808, that, " * * * [a]lthough a hearing before the Court of Common Pleas pursuant to R.C. 2506.01 is not *de novo,* it often in fact resembles a *de novo* proceeding. R.C. 2506.03 specifically provides that an appeal pursuant to R.C. 2506.01, 'shall proceed as in the trial of a civil action,' and makes liberal provision for the introduction of new or additional evidence."

A court of common pleas should not substitute its judgment for that of an administrative board, such as the board of zoning appeals, unless the court finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision. This court pointed out in *Dudukovich v. Housing Authority* (1979), 58 Ohio St.2d 202, 207, 389 N.E.2d 1113, "[t]he key term is 'preponderance.' " The court went on further to explore the scope of review by the appellate courts and found, "[i]n determining whether the standard of review prescribed by R.C. 2506.04 was correctly applied by the Court of Common Pleas, both this court [the Supreme Court] and the Court of Appeals have a limited function." *Id.* In an R.C. Chapter 2506 administrative appeal of a decision of the board of zoning appeals to the common pleas court, the court, pursuant to R.C. 2506.04, may reverse the board if it finds that the board's decision is not supported by a preponderance of reliable, probative and substantial evidence. *An appeal to the court of appeals, pursuant to R.C. 2506.04, is more limited in scope and requires that court to affirm the common*

> *pleas court, unless the court of appeals finds, as a matter of law,*
> *that the decision of the common pleas court is not supported by a*
> *preponderance of reliable, probative and substantial evidence.*

(Emphasis added and brackets sic.) *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

{¶ 24} Thus, R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence. *Dudukovich* at 207. Although a hearing before a common pleas court pursuant to R.C. 2506.01 is not a de novo review, "it often in fact resembles a de novo proceeding." *Cincinnati Bell*, 42 Ohio St.3d at 370, 328 N.E.2d 808.

{¶ 25} By contrast, the standard of review for an appellate court reviewing a judgment of a common pleas court in this type of appeal is narrower and more deferential to the lower court's decision. *Kisil* at 34. In fact, we have stressed that the "standard of review to be applied by the courts of appeals in an R.C. 2506.04 appeal is '*more limited* in scope.' " (Emphasis sic.) *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000), quoting *Kisil* at 34. The courts of appeals may review the judgments of the common pleas courts only on questions of law; they do not have the same power to weigh the evidence. *Id.* "[T]he application of [a statute] to the facts is a 'question of law'—[a]n issue to be decided by the judge, concerning the application or interpretation of the law.' Black's Law Dictionary (7 Ed.1999) 1260." *Id*. at 148. *Accord Lang v. Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 12 ("A question of statutory construction presents an issue of law that we determine de novo on appeal").

***The Opinion of the Court of Appeals***

**{¶ 26}** We now turn to an examination of the court of appeals decision in light of the principles outlined above. We must determine whether the appellate court applied the correct standard in reversing the judgment of the common pleas court. Upon review, we hold that it did not.

**{¶ 27}** The court of appeals applied the incorrect standard of review when it reversed the trial court's decision because "[t]he BZA reasonably interpreted the ordinance, and its decision was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." 2012-Ohio-6008, ¶ 13. As we have emphasized, R.C. 2506.04 requires the court of appeals to affirm unless the court of appeals finds, as a matter of law, that the decision *of the common pleas court* is not supported by a preponderance of reliable, probative, and substantial evidence. The appellate court in this case thus reviewed the wrong decision. It found that the BZA's resolution was properly supported by the requisite quantum of evidence. It should have applied that standard to the decision of the common pleas court.

**{¶ 28}** The appellate court did devote some of its discussion to a review of the trial court's decision, but limited its remarks to faulting that court for failing to explain its rationale and failing to identify supporting evidence. *Id.* at ¶ 20. While these may or may not be flaws in the trial court's opinion, they are not fatal. The appellate court had a duty to affirm unless it found, as a matter of law, that the trial court's decision was unsupported by the required evidence. The court of appeals made no such finding in this case. Instead, it found that *the decision of the BZA* "was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." *Id.* at ¶ 13.

{¶ 29} We take further note of the court of appeals' comment that the common pleas court had a duty to defer to the decision of the BZA. Not so. A court owes no duty of deference to an administrative interpretation unless it finds the ordinance ambiguous. "A court, as well as an agency, must give effect to the unambiguously expressed intent of [the legislature]." *Lang,* 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 12. The common pleas court in this case did not find that the ordinances in question were ambiguous. In fact, it stated that from a "plain reading of the Code," it is "clear" that a helipad is a permitted accessory use. Therefore, it cannot be faulted for according no deference to the BZA.

{¶ 30} In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law. The court of appeals made no such finding in this case. It therefore erred in reversing the trial court's judgment.

### *Application of the Proper Standard of Review*

{¶ 31} Having set forth the proper standards of review, we proceed with the analysis.

{¶ 32} The common pleas court found that "hospitals and their accessory uses are expressly permitted in the City's Multi-Family District, and are therefore permissible in the City's areas that are zoned 'Local Retail Business District.' " The parties do not dispute that conclusion. Rather, they dispute whether a helipad is an accessory use.

{¶ 33} In order to determine the accessory uses that are permitted in a Multi-Family District, we will focus primarily on the language of C.C.O. 325.02 and 325.721 (defining "accessory use"), 337.08 (listing the types of buildings permissible in a Multi-Family District), and 343.01(b) (listing permitted buildings

12

and uses in a Local Retail Business District). All have significance here. In our analysis of these ordinances, we must bear in mind two principles.

{¶ 34} The first of these principles states that zoning ordinances are to be construed in favor of the property owner because they are in derogation of the common law and deprive the property owner of uses to which the owner would otherwise be entitled. *Univ. Circle, Inc. v. Cleveland,* 56 Ohio St.2d 180, 184, 383 N.E.2d 139 (1978). Thus, we have long held that restrictions imposed on the use of private property via ordinance, resolution, or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed. *See Saunders v. Clark Cty. Zoning Dept.*, 66 Ohio St.2d 259, 261, 421 N.E.2d 152 (1981); *see also State ex. rel. Moore Oil Co. v. Dauben*, 99 Ohio St. 406, 124 N.E. 232 (1919). In other words, we do not permit zoning "limitations by implication." *Henley*, 90 Ohio St.3d at 152, 735 N.E.2d 433.

{¶ 35} Second, we have long held that when applying a zoning provision, a court must not view the provision in isolation; rather, its "meaning should be derived from a reading of the provision taken in the context of the entire ordinance." *Id*.

{¶ 36} Mindful of those principles, we now consider the relevant provisions of the C.C.O. in this case.

{¶ 37} C.C.O. 325.02 defines "accessory use or building" to mean "a subordinate use or building customarily incident to and located on the same lot with the main use or building." C.C.O. 325.721 defines "use, accessory" as "[a] subordinate land use located on the same lot or parcel as a Principal Use * * * and serving a purpose customarily incidental to that of the Principal Use." The proposed helipad at the hospital fits these definitions because the helipad will be built on the same lot or parcel, and a helipad is customarily incidental to the principal use of the property, a hospital.

{¶ 38} C.C.O. 337.08 provides that no building shall be permitted in a Multi-Family District for any use other than the uses listed therein. Division (e)(5) expressly includes hospitals among the buildings permitted in a Multi-Family District (and therefore in a Local Retail Business District, where the Hospital is located, *see* C.C.O. 343.01(b)(1)). And C.C.O. 337.23(a)(9) specifically permits within a Multi-Family District "[a]ny other accessory use customarily incident to a use authorized in a Residence District except that no use prohibited in a Local Retail Business District shall be permitted as an accessory use."

{¶ 39} C.C.O. 343.01 governs Local Retail Business Districts. As we have noted, C.C.O. 343.01(b)(1) establishes that except where otherwise provided, all uses permitted in a Multi-Family District are permitted in a Local Retail Business District. The parties do not cite, and we are unable to find, any provision in Cleveland's zoning code that expressly forbids helipads in a Local Retail Business District or in a Multi-Family District. The absence of any prohibition on helipads was key to the trial court's decision, which found no ambiguity in the ordinance.[2]

{¶ 40} Notwithstanding the absence of a prohibition on helipads, the BZA asserts that because C.C.O. 343.01(b)(8) provides that accessory uses are allowed "only to the extent necessary normally accessory to the limited types of neighborhood service use permitted under this division," a helipad is forbidden because helipads are not "normally required for the daily local retail business needs of the residents of the locality only." But that argument seems designed to

---

[2] The record suggests that at least one city councilperson acknowledged that although other cities have enacted zoning provisions governing helipads, Cleveland has not. Cleveland, of course, is free to do so, within constitutional limits.

inject ambiguity into a code that is not ambiguous.[3]  Rather than focusing solely on one isolated provision in the code, the BZA was required to look to the code as a whole. *Univ. Circle,* 56 Ohio St.2d at 184, 383 N.E.2d 139.

{¶ 41} The BZA's argument ignores that under the code as a whole, a hospital is expressly permitted within a Multi-Family District, and therefore a hospital is also permitted in a Local Retail Business District. The salient question, then, is not whether any other business in the Local Retail Business District normally requires a helipad, but rather, whether a hospital normally requires a helipad.  If a helipad is customarily incident to a hospital, it is a permitted use under the code.

{¶ 42} Given the record before us, we have little trouble concluding that the preponderance of substantial, reliable, and probative evidence supports the trial court's conclusion that helipads are customarily incident to hospitals, at least in Cleveland.  The record establishes that every other hospital in Cleveland has a helipad and that nearly 88 percent of hospitals in the Cleveland metropolitan area have helipads.  There was no rebuttal to the assertion at the hearing that most hospitals in Ohio and around the country have helipads.  In the absence of any evidence to the contrary, the only conclusion to be drawn from the record is that helipads are customarily incident to hospitals.  Therefore, under the zoning provisions at issue here, the trial court properly found that the Hospital was entitled to construct the helipad and the appellate court erred in reversing that determination.

---

[3] Even if we were to hold that any of these ordinances are ambiguous, however, the result would be the same.  An ambiguous zoning provision must be construed in favor of the property owner. *Univ. Circle, Inc. v. Cleveland,* 56 Ohio St.2d 180, 184, 383 N.E.2d 139 (1978).

## CONCLUSION

{¶ 43} Under the current version of the Cleveland zoning ordinances, a helipad is a permitted accessory use for a hospital in a Local Retail Business District. We therefore reverse the judgment of the court of appeals and remand this case to the common pleas court to reinstate its decision in favor of the appellants.

Judgment reversed,

and cause remanded.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and BELFANCE, JJ., concur.

EVE BELFANCE, J., of the Ninth Appellate District, sitting for O'NEILL, J.

————————————

Tucker Ellis L.L.P., Irene C. Keyse-Walker, and Benjamin C. Sassé; and Berns, Ockner & Greenberger, L.L.C., Sheldon Berns, Timothy J. Duff, and Gary F. Werner, for appellants.

City of Cleveland Law Department, Barbara A. Langhenry, Director of Law, and Carolyn M. Downey, Assistant Director of Law, for appellee.

————————————